Martha Hill Jamison, Justice
We issued our original majority opinion in this case on January 11, 2018. Appellee filed a motion for rehearing and motion for en banc reconsideration. We withdraw the previous majority opinion of January 11, 2018, issue this substitute majority opinion, and deny appellee's motion for rehearing. Appellee's motion for en banc reconsideration is denied as moot.
This is an appeal from a judgment terminating the parental rights of M.H. (Mother)[1] and C.N. (Father) and appointing the Department of Family and Protective Services sole managing conservator of the child, F.E.N. (Fay).[2] Father contends (1) there was legally and factually insufficient evidence to support the findings necessary for termination, (2) the trial court proceedings violated his due process rights, and (3) the trial court erred in appointing the Department as sole managing conservator of Fay. We reverse that portion of the trial court's judgment terminating Father's parental rights and render judgment denying the Department's request for termination. We further reverse the order of the trial court naming the Department sole managing conservator and remand to the trial court for a determination of conservatorship. We affirm the remainder of the trial court's judgment terminating Mother's parental rights.
BACKGROUND
I. Procedural History
In January 2011, the Department received a referral of neglectful supervision of Fay by Mother. It was reported that Mother placed Fay, who was 11 months old, at substantial risk of harm through inadequate supervision, drug usage, and domestic violence. Father was not contacted at that time.
The Department filed a petition for protection of a child, conservatorship, and termination in a suit affecting the parent-child relationship (First Suit). Father, identified as the "alleged father," was named in the First Suit, but not served. The Department was named temporary managing conservator of Fay during the pendency of the proceedings. Fay was returned to Mother and on February 24, 2012, a decree was signed granting the Department sole managing conservatorship of Fay and naming Mother a possessory conservator of Fay. The decree made no findings as to Father.[3] The decree did not terminate either parent's parental rights to Fay.
Approximately five months later, Fay was again removed from Mother based on Mother's positive test for cocaine. In early 2013, Mother filed a motion to modify the parent-child relationship. Subsequently, the Department filed an "original motion to modify conservatorship and for termination of the parent-child relationship" (Second Suit). The Department's motion requested modification of the February 24, 2012 order, to which Father was not a party. Father was again identified as an "alleged father." As to Father, the Second *759 Suit is an original custody determination and termination suit.
An acknowledgement of paternity naming Father as Fay's biological father was filed. Father filed a waiver of service and his answer. On September 6, 2013, an order was signed suspending visitation, as to Father, until paternity was established and he provided a clean drug test.[4] Father took both tests, but his visitation with Fay was not resumed. Almost two years later, Mother filed a voluntary relinquishment. The case went to trial May 10, 2017, four years after it was filed. The order terminating both parents' rights and appointing the Department as sole managing conservator of Fay was signed June 22, 2017. The order also adjudicated Father's paternity as to Fay.
II. Trial Proceedings
A. Evidence about Father
Father[5] testified he was in a relationship with Mother for one to two years and lived with Mother prior to Fay's birth. Father has been employed as a shrimper for twenty to thirty years. As a result of his work, Father is out to sea five to ten times a year for five to six weeks at a time. Father visited Fay when he was home from work and provided monetary support to Mother and Fay. Mother testified Father visited whenever he could, helped with Fay, financially provided anything she needed, was a good father, and would do anything for Fay.
Father was out to sea when Fay was first removed from Mother. During the original proceedings for conservatorship and termination, Father provided funds for Mother to retain a lawyer. Father believed the lawyer retained by Mother was working on his behalf as well. Mother testified Father and the retained lawyer spoke about paternity. Father acknowledged he did not retain a lawyer for himself.
Mother testified she told Father a bit about the case, but did not provide him all of the information, telling him everything was taken care of. Mother admitted she kept Father "out of the loop" on some things because initially she wanted Fay to live with her mother to be closer to her.
The Department caseworker testified that Father first participated in the case in late 2013, when she was assigned to the case. She testified her notes indicated Father refused to sign a service plan provided by a previous caseworker, but she could not confirm if the previous caseworker provided a translator during the interaction or if Father knew what he had been given. The new caseworker did not present Father a service plan. Father testified the Department did not provide him with a service plan and that he was not provided a translator during his interactions with the Department.
The caseworker further testified that Father had not provided any support for Fay since 2013. Father acknowledged he had not sent financial support to anyone since 2014, but stated he was not asked to provide financial support and he was not provided information about where to send support. He testified he would have provided financial support if it was requested.[6]
*760 Because of a 2013 court order suspending his visitation, Father had not seen Fay in approximately three years. Father testified that he asked the court for visitation approximately three to four years prior to trial. He assumed that, because Mother was not allowed to visit Fay, he was not allowed to visit Fay either.
Father wanted to have "my child back to the family." When he goes out to sea, he wants his current girlfriend to watch Fay for him.
B. Evidence about Fay
Fay was placed with her current foster family in March 2013, when she was three years old. When she first arrived, she repeated things the foster family said and when asked her name she simply said "name." Fay starting seeing a psychologist in January 2014. The psychologist testified Fay initially presented with echolalia (repetition of words spoken by another), select mutism, and difficulty engaging and attaching to others. The psychologist felt Fay's problems stemmed from a parent or caregiver being intermittently unavailable.
Fay's foster mother testified today she is a thriving, wonderful seven year old. Fay has friends in the community and excels in school. The psychologist testified she has improved since placement with her foster family. Fay is now very bright, articulate, and able to express her emotions, and she has formed a secure attachment with her foster parents and social setting. The foster family hopes to adopt Fay. The Department caseworker testified it is in Fay's best interest to terminate Father's parental rights because Fay is bonded to the foster family and is in a stable, secure, loving environment.
The psychologist testified Fay's well-being would be endangered by placing her with anyone other than the foster parents. She opined a different placement would result in a psychological disruption because of the secure attachment she has formed in the foster home. The psychologist did not recommend visits or placement with Father. She had concerns about his being at sea for five to six weeks at a time and his proposed plan of leaving Fay with his girlfriend while he was gone.
C. Trial Court Findings
On June 22, 2017, the trial court signed a decree terminating Mother's and Father's parental rights and appointing the Department sole managing conservator of Fay. The trial court found Father engaged in the conduct described in subsections (C) (voluntary abandonment), (E) (endangerment), (F) (failure to support), and (N) (constructive abandonment) of section 161.001(b)(1) of the Family Code. The court additionally found termination of Father's parental rights was in Fay's best interest. The trial court continued the appointment of the Department as Fay's sole managing conservator. This appeal followed.
ANALYSIS
Father raises three primary issues challenging the trial court's judgment. In his first issue, Father challenges the legal and factual sufficiency of the evidence to support the trial court's findings necessary for termination under section 161.001(b). In his next issue, Father contends the trial court violated his due process rights by not providing him with a translator throughout the proceedings. Finally, Father contends the trial court's appointment of the Department as sole managing conservator of Fay violates his fundamental rights and liberty interests.
I. Findings Necessary to Support Termination
A. Burden of Proof and Standard of Review *761 Parental rights can be terminated upon clear and convincing evidence that (1) the parent has committed an act described in section 161.001(b)(1) of the Family Code and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2) ; In re J.O.A. , 283 S.W.3d 336, 344 (Tex. 2009).
Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. See In re G.M. , 596 S.W.2d 846, 846 (Tex. 1980) ; In re S.R. , 452 S.W.3d 351, 357 (Tex. App.-Houston [14th Dist.] 2014, pet. denied). Although parental rights are of constitutional magnitude, they are not absolute. In re C.H. , 89 S.W.3d 17, 26 (Tex. 2002). The child's emotional and physical interests must not be sacrificed merely to preserve the parent's rights. Id.
Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to clear and convincing evidence. See Tex. Fam. Code. Ann. § 161.001 ; In re J.F.C. , 96 S.W.3d 256, 263 (Tex. 2002). " 'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 ; accord In re J.F.C. , 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. In re S.R. , 452 S.W.3d at 358. "But the constitutional and statutory requirement that parental rights cannot be terminated unless grounds for termination are established by clear and convincing evidence necessarily means that the ultimate burden of proof based on clear and convincing evidence remains with the party seeking to terminate the parental rights." In re L.M.I. , 119 S.W.3d 707, 720 (Tex. 2003).
In reviewing the legal sufficiency of the evidence in a termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. See In re J.O.A. , 283 S.W.3d at 344 ; In re J.F.C. , 96 S.W.3d at 266. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could have disbelieved. In re J.O.A. , 283 S.W.3d at 344 ; In re J.F.C. , 96 S.W.3d at 266.
In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed or conflicting evidence. See In re J.O.A. , 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." In re J.F.C. , 96 S.W.3d at 266. We give due deference to the fact finder's findings, and we cannot substitute our own judgment for that of the fact finder. In re H.R.M. , 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. Id. at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." In re L.M.I. , 119 S.W.3d at 712.
B. Predicate Grounds
The trial court terminated Father's parent rights based on its predicate findings under Texas Family Code sections 161.001(b)(1)(C), (E), (F), and (N). Termination of parental rights is warranted under these respective subsections if the Department *762 proves by clear and convincing evidence, in addition to the best-interest finding, that Father has:
(C) voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months;
***
(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
(F) failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition;
***
(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
(i) the department has made reasonable efforts to return the child to the parent;
(ii) the parent has not regularly visited or maintained significant contact with the child; and
(iii) the parent has demonstrated an inability to provide the child with a safe environment;
Tex. Fam. Code Ann. § 161.001(b)(1)(C), (E), (F), and (N).
1. Predicate Finding under Subsection (C)-Voluntary Abandonment
A court may terminate a parent's parental rights if the court finds by clear and convincing evidence that the parent (1) voluntarily left the child alone or in the possession of another; (2) without providing adequate support of the child; and (3) remained away for a period of at least six months. Id. § 161.001(b)(1)(C). The period of six months is a period of six consecutive months. See Jordan v. Dossey , 325 S.W.3d 700, 727 (Tex. App.-Houston [1st Dist.] 2010, pet. denied).
Father contends there is no evidence that he voluntarily left Fay alone or in the possession of another without providing adequate support for a consecutive six-month period. Father contends the evidence shows he was on land five to ten times a year and would visit Fay whenever he was onshore. Father also contends the evidence shows that he provided adequate financial support to Mother and Fay. The Department contends the evidence was conclusive as to voluntary abandonment. The Department states Father did not visit Fay for the three years before trial and did not provide support for Fay while she was in the Department's care.
Father's argument utilizes evidence of his interactions and support of Fay while she was in Mother's care. Alternatively, the Department utilizes the evidence of Father's interactions and support of Fay after the second removal.[7] The only time period for which Father may have been away from Fay for at least six consecutive months is during the second removal. Subsection (C) requires evidence that Father voluntarily left the child in the possession of another and remained away for at least six consecutive months. Therefore, we will consider only whether the evidence demonstrates that Father voluntarily left Fay with the Department for at least six consecutive *763 months during the second removal, which began July 13, 2012.
Father's visitation with Fay was suspended by court order on September 6, 2013, until he obtained a clean drug test and paternity was established. We note that this order was signed before Father made an appearance in the case. Additionally, the record does not establish that Father's visitation was reinstated, although there is evidence that Father requested the court to reinstate his visits three to four years prior to trial, which would have been in 2013 or 2014. We conclude that Father's time away from Fay after September 6, 2013 was not "voluntary." See In re J.K.H. , No. 06-09-00035-CV, 2009 WL 2948575 (Tex. App.-Texarkana Sept. 16, 2009, no pet.) (mem. op.) (finding that Father did not voluntarily leave the children because he left the children pursuant to a court order). We do not consider any time after September 6, 2013.
A consecutive six-month period before September 6, 2013 needed to commence no later than March 6, 2013. The Department caseworker, who began working on the case in February 2013, testified she met with Father in a visitation setting about four times.[8] Accordingly, there is undisputed evidence that Father visited with Fay in 2013.
To support a finding under subsection (C), the four 2013 visits must have all occurred prior to March 9, 2013. However, the Department caseworker did not specify the time frame of the meetings in a visitation setting with Father after she began working on this case. The Department's burden of proof under subsection (C) was to establish voluntary abandonment by Father during a consecutive six-month period. The record does not show a definitive consecutive six-month period wherein Father remained away from Fay.
Construing all the evidence in the light most favorable to the finding, we conclude a reasonable fact finder could not have formed a firm belief or conviction that its finding was true. We conclude the evidence was legally insufficient to support the trial court's finding under section 161.001(b)(1)(C).
2. Predicate Finding under Subsection (E)-Endangerment
A finding of endangerment under subsection E requires clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). "Conduct" under subsection E includes acts, omissions, or failures to act. In re A.L.H. , 515 S.W.3d 60, 91 (Tex. App.-Houston [14th Dist.] 2017, pet. denied). In this context, endanger means "to expose to loss or injury; to jeopardize." In re T.N. , 180 S.W.3d 376, 383 (Tex. App.-Amarillo 2005, no pet.) (quoting In re M.C. , 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) ). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. In re S.M.L. , 171 S.W.3d 472, 477 (Tex. App.-Houston [14th Dist.] 2005, no pet.).
Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. Id. A court properly may consider actions and inactions occurring both before and after a child's *764 birth to establish a "course of conduct." In re S.R. , 452 S.W.3d at 360. While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffer injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. Tex. Dep't of Human Servs. v. Boyd , 727 S.W.2d 531, 533-34 (Tex. 1987) ; In re S.R. , 452 S.W.3d at 360. As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. See In re C.J.S. , 383 S.W.3d 682, 689 (Tex. App.-Houston [14th Dist.] 2012, no pet.). In evaluating endangerment under subsection E, courts may consider conduct both before and after the Department removed the child from the home. See Avery v. State , 963 S.W.2d 550, 553 (Tex. App.-Houston [1st Dist.] 1997, no writ) (considering persistence of endangering conduct up to time of trial); In re A.R.M. , No. 14-13-01039-CV, 2014 WL 1390285, at *7 (Tex. App.-Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.) (considering pattern of criminal behavior and imprisonment through trial).
Father contends the evidence is legally and factually insufficient to support the trial court's finding terminating his parental rights under subsection (E). The Department responds that Father's failure to protect Fay from Mother's dangerous habits and behaviors constituted endangerment. "One parent's drug-related endangerment of the child may be imputed to the other parent." Edwards v. Tex. Dep't of Protective & Regulatory Servs. , 946 S.W.2d 130, 138 (Tex. App.-El Paso 1997, no writ), disapproved of on other grounds by In re J.F.C. , 96 S.W.3d at 267 n.39. However, Father must have had knowledge of Mother's drug use for his inaction to constitute endangerment. See Tex. Fam. Code Ann. § 161.001(b)(1)(E) (requiring knowledge that others are engaging in endangering conduct); see also In re U.P. , 105 S.W.3d 222, 234, 236 n.7 (Tex. App.-Houston [14th Dist.] 2003, pet. denied). In support of its position, the Department cites several cases wherein a parent's knowledge of the other parent's drug use was considered in a determination under subsection (E).[9] However, the cases cited by the Department are distinguishable from the facts of this case because in each of the cited cases, evidence was offered of the parent's knowledge of the other parent's drug use.
During the trial, both Mother and Father testified that Father was unaware of Mother's drug use. Mother testified she hid her drug use from everyone. Father testified Mother told him the reason for Fay's removal by the Department was she drank beer. The Department contends the trial court was free to disregard the testimony that Father was unaware of Mother's drug use based on the referrals to the Department alleging Mother's drug use and Father's testimony that he lived with Mother before and after Fay's birth. However, "although a trial court is generally free to disbelieve testimony, in the absence *765 of competent evidence to the contrary, it is not authorized to find that the opposite of the testimony is true." Schwartz v. Pinnacle Communications , 944 S.W.2d 427, 434 n.5 (Tex. App.-Houston [14th Dist.] 1997, no writ). Our review of the record shows that the testimony that Father had no knowledge of Mother's drug use was left uncontroverted.
The Department also contends that Father's failure to act in response to Fay's removal into the Department's care is conduct which jeopardized Fay's well-being. We note there is no evidence that Father was present or otherwise notified by the Department when Fay was removed, and he was not served in the original lawsuit at all. Further, there is evidence that Father participated in visitation at the Department after the first and second removal of Fay from Mother. Father met with Fay's psychologist regarding visitation. Father testified he requested visitation from the trial court. We conclude that Father's actions after Fay's removal do not constitute conduct which jeopardized her well-being.
Construing all the evidence in the light most favorable to the finding, we conclude a reasonable fact finder could not have formed a firm belief or conviction that its finding was true. We conclude the evidence was legally insufficient to support the trial court's finding under section 161.001(b)(1)(E).
3. Predicate Finding under Subsection (F)-Failure to Support
A trial court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has (1) failed to support the child; (2) in accordance with the parent's ability; and (3) during a period of one year ending within six months of the date of the filing of the petition. Tex. Fam. Code Ann. § 161.001(b)(1)(F) ; see also In re D.M.D. , 363 S.W.3d 916, 920 (Tex. App.-Houston [14th Dist.] 2012, no pet.). The Department requested termination pursuant to subsection (F) in its motion for modification and termination filed March 1, 2013. Accordingly, the relevant time period for consideration of subsection (F) is any twelve consecutive months between September 1, 2011 and March 1, 2013. See In re C.L. , 322 S.W.3d 889, 892 (Tex. App.-Houston [14th Dist.] 2010, pet. denied).
A parent has a duty to provide support for his child, even when the parent does not have custody of the child. See In re D.M.D. , 363 S.W.3d at 921. Support includes "providing the child with clothing, food, shelter, medical and dental care, and education." Tex. Fam. Code Ann. § 151.001(a)(3).
Between September 1, 2011 and February 21, 2012, Fay lived in a foster home under the Department's temporary managing conservatorship. While there is no evidence that Father supported Fay within his ability during this period, it is not a period of twelve consecutive months.[10] From February 21, 2012 to July 13, 2012, Fay lived with Mother under the Department's managing conservatorship. Father's and Mother's testimony was that Father was financially supporting Fay while she was living with Mother, including during this period.
The Department does not contest that Father sent financial support to Mother during this time, but instead contends that the Department was the only one authorized to receive support on Fay's behalf as *766 her managing conservator beginning February 24, 2012. The Department does not cite any case law in support of its argument. Additionally, at trial, no evidence was offered to establish that only the Department could receive financial support intended for Fay beginning on February 24, 2012 when it was appointed managing conservator. We note that Father was not served in this proceeding and was not ordered to pay the Department for Fay's support or notified where support should be sent. The Department bears the burden of proving the elements necessary for termination under this subsection by clear and convincing evidence. Based on the evidence in the record, we conclude the Department did not establish Father's provision of financial support to Mother for Fay between February 24, 2012 and July 13, 2012 was a failure to support Fay.
Fay was removed from Mother July 13, 2012. There is evidence in the record that Father did not provide support for Fay to the Department or to her current caregivers after that time. However, the relevant time period under subsection (F) ends March 1, 2013, which is not twelve consecutive months after July 13, 2012. Construing all the evidence in the light most favorable to the finding, we conclude a reasonable fact finder could not have formed a firm belief or conviction that its finding was true. We conclude the evidence was legally insufficient to support the trial court's finding under section 161.001(b)(1)(F).
4. Predicate Finding under Subsection (N)-Constructive Abandonment
To prove constructive abandonment, clear and convincing evidence must establish that: (1) the child has been in the permanent or temporary managing conservatorship of the Department for not less than six months, (2) the Department made reasonable efforts to return the child to the parent; (3) the parent has not regularly visited or maintained significant contact with the child; and (4) the parent has demonstrated an inability to provide the child with a safe environment. See Tex. Fam. Code Ann. § 161.001(b)(1)(N) ; see also In re J.E.M.M. , 532 S.W.3d 874, 884 (Tex. App.-Houston [14th Dist.] 2017, no pet.).
If the evidence is legally insufficient on any one of these elements, the termination finding cannot be sustained. See In re D.T. , 34 S.W.3d 625, 633 (Tex. App.-Fort Worth 2000, pet. denied). Father contends the Department did not present sufficient evidence to demonstrate the elements required under subsection (N). The Department argues there is overwhelming support for this finding based on Father's conduct while Fay was in the Department's care.
Father contends the Department did not make reasonable efforts to return Fay because it never provided him with a service plan. On appeal, the Department does not contest Father's assertion that he was not provided with a service plan. Rather, the Department contends its actions during the proceedings involving Fay establish reasonable efforts to return the child. While implementation of a family service plan by the Department is generally considered a reasonable effort to return a child to the parent, that is not the only evidence which can satisfy this element. See In re A.L.H. , 468 S.W.3d 738, 744-45 (Tex. App.-Houston [14th Dist.] 2015, no pet.).
We consider whether the record reflects that there were reasonable efforts to return the child in spite of the absence of a family service plan. See id at 745. We focus on the Department's efforts, not Father's. See Tex. Fam. Code Ann. § 161.001(1)(N)(i). In determining whether *767 the evidence is sufficient to support termination under subsection (N), the question is whether the Department made reasonable efforts, not ideal efforts. In re G.K.G.A. , No. 01-16-00996-CV, 2017 WL 2376534, at *5 (Tex. App.-Houston [1st Dist.] June 1, 2017, pet. denied) (mem. op.).
The Department contends reasonable efforts were made to return Fay to Father. First, the Department notes a service plan was prepared for Father in 2011. The permanency goal as stated in this service plan was "Alt. Family: [u]nrelated, [a]doption,"[11] and not family reunification. The caseworker was unable to confirm that Father had received or understood the plan. During the First Suit, the Department did not obtain service on Father, despite his name being on Fay's birth certificate as her father.[12] The Department first attempted service on Father during the Second Suit one time at a Houston, Texas address and one time at a Port Arthur, Texas address, but Father was not located. Despite knowing that Father worked off-shore for several weeks at a time, the Department, according to our record, made no further attempts to personally serve Father. Instead, the Department received permission to serve Father by publication in September 2013.
After Father appeared, there is evidence that the Department caseworker met with Father in a visitation setting. Subsequently, the trial court entered an order suspending Father's visitation until paternity could be established, despite Father's name being on the birth certificate, and until Father submitted a clean drug test, despite there being no allegations of Father's drug use. The record does not contain evidence of the arguments made in support of the order. The record contains a copy of Father's acknowledgement of paternity and negative drug tests related to Father. However, there is no evidence the Department made any attempt to resume Father's visitation with Fay. Father met with Fay's psychologist. The psychologist recommended that Father not be allowed any visitation with Fay as such would endanger her emotional well-being because she is bonded to the foster family.
We do not agree that the Department's actions constitute a reasonable effort to return Fay to Father. The record does not shed light on the Department's failure to serve Father with notice of the first suit or whether any attempt at service was made. Additionally, the Department's 2011 permanency goal of unrelated adoption is contrary to an attempt to return Fay to Father. Construing all the evidence in the light most favorable to the finding, we conclude a reasonable fact finder could not have formed a firm belief or conviction that its finding was true. We conclude the evidence was legally insufficient to support the trial court's finding under section 161.001(b)(1)(N). See In re A.L.H. , 468 S.W.3d at 745-46 (holding that in the absence of a service plan or aggravating circumstances, Department's evidence of attempted service of suit and establishment *768 of paternity were insufficient to produce in the trial court's mind a firm belief or conviction that the Department made reasonable efforts at reunification).
Having concluded that the evidence was legally insufficient to support termination of Father's parental rights pursuant to subsections (C), (E), (F), and (N), we sustain Father's first issue.
II. Due Process Violation
In his second issue, Father contends his due process rights were violated by the failure of the Department and the court to provide him with a translator during some of the proceedings in this case. Further, Father contends the translator provided during trial was subpar and uncertified. The Department responds that Father did not preserve this issue for appellate review.
Due process violations must be raised in the trial court for them to be preserved on appeal. See In re L.M.I. , 119 S.W.3d at 710-11 ; see also In re B.L.D. , 113 S.W.3d 340, 349-55 (Tex. 2003) (discussing preservation of error in termination cases). The record shows no indication that Father objected to the Department's failure to provide a translator during its interactions with him or the failure to provide a translated family service plan. Further, there is no indication that Father objected to the translator provided by the trial court at trial. We conclude Father has waived his due process complaint. We overrule Father's second issue.
III. Conservatorship
Father contends the Department did not present any evidence which would justify taking conservatorship away from him. We construe this as a legal and factual sufficiency challenge to the trial court's conservatorship finding. The Department contends this issue was not preserved for appellate review and Father did not seek appointment as conservator, but rather asked the court to appoint the Department conservator of Fay.
A. Waiver
The Department contends that Father did not preserve his challenge to its appointment as managing conservator because he did not attack the trial court's February 2012 judgment naming the Department managing conservator. We note that Father was not served in the 2012 action. The Department also claims that Father did not plead for conservatorship. However, Father testified, when asked what he was asking the court for, "I would like to have my child back to the family." See Baltzer v. Medina , 240 S.W.3d 469, 476 (Tex. App.-Houston [14th Dist.] 2007, no pet.) (stating that where "issues not raised by the pleadings are tried by express or implied consent of the parties, these issues shall be treated as if they had been raised by the pleadings.").
The Department also argues that Father conceded the issue. In its brief, the Department alleges that Father asked the court to continue the Department as the child's sole managing conservator, quoting counsel as saying "consider PMC to the agency." We do not agree. The full quote of counsel was "there's no grounds to terminate this father's rights and consider PMC to the agency on this case because this father absolutely deserves a chance to parent this child."
We conclude Father did not waive this issue, and we address Father's challenge to the appointment of the Department as managing conservator.
B. The Parental Presumption
The Department, for the first time in its motion for rehearing, argues that the parental presumption does not apply to *769 this case which it alleges is a modification proceeding. See In re V.L.K. , 24 S.W.3d 338, 340 (Tex. 2000). As discussed earlier, Father was not notified and did not appear during the First Suit. Father was not adjudicated to be Fay's father and remained an alleged father throughout the First Suit. The differences between an original conservatorship suit and a modification action are "more than procedural or semantic." See In re C.A.M.M. , 243 S.W.3d 211, 215 (Tex. App.-Houston [14th Dist.] 2007, pet. denied). Each proceeding is governed by a distinct statutory scheme designed to address different policy concerns. In re R.T.K. , 324 S.W.3d 896, 900 (Tex. App.-Houston [14th Dist.] 2010, pet. denied).
In an original proceeding, a non-parent is required to " 'affirmatively prove by a preponderance of the evidence that appointment of the parent as managing conservator would significantly impair the child, either physically or emotionally.' " In re C.A.M.M. , 243 S.W.3d at 215. However, in a modification proceeding, such proof is not required and the parental presumption does not apply. Id. at 215-16. The Department may not take advantage of its failure to identify and serve Father in the First Suit to deny him the statutory benefit of a parental presumption in this original custody determination and termination suit. On this record, we conclude that the Second Suit is not a modification proceeding as to Father and we apply the parental presumption.
C. Appointment of Managing Conservator
We review the trial court's determination of conservatorship under an abuse of discretion standard. In re J.A.J. , 243 S.W.3d 611, 616 (Tex. 2007). We will reverse a trial court's conservatorship determination only if the decision is arbitrary and unreasonable. In re C.A.M.M. , 243 S.W.3d at 215. Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. In re A.H.A. , No. 14-12-00022-CV, 2012 WL 1474414, at *11 (Tex. App.-Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.). When, as here, an appellant challenges the legal and factual sufficiency of the evidence in a case where the proper standard is abuse of discretion, we engage in a two-pronged analysis: (1) whether the trial court had sufficient information upon which to exercise its discretion, and (2) whether the trial court erred in its application of discretion. In re J.J.G. , No. 01-16-00104-CV, 540 S.W.3d 44, 54-56, 2017 WL 3492308, at *8 (Tex. App.-Houston [1st Dist.] Aug. 15, 2017, no pet.) ; Swaab v. Swaab , 282 S.W.3d 519, 525 (Tex. App.-Houston [14th Dist.] 2008, pet. dism'd w.o.j.).
Although trial courts are afforded broad discretion in deciding family law questions, the legislature has explicitly limited the exercise of that discretion when a nonparent seeks to be appointed as managing conservator. Lewelling v. Lewelling , 796 S.W.2d 164, 168 (Tex. 1990). When a court determines conservatorship between a parent and a nonparent, "a presumption exists that appointing the parent as the sole managing conservator is in the child's best interest; this presumption is deeply embedded in Texas law." In re M.J.C.B., Jr. , No. 11-14-00140-CV, 2014 WL 6433378, at *1 (Tex. App.-Eastland Nov. 14, 2014, no pet.) (mem. op.) (citing Tex. Fam. Code Ann. § 153.131 and Lewelling , 796 S.W.2d at 166 ).
"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship[.]" Tex. Fam. Code Ann. § 153.002. However, the inquiry does not *770 end there; the statutory language in Section 153.131(a) creates a strong presumption in favor of parental custody and imposes a heavy burden on a nonparent. Lewelling , 796 S.W.2d at 167. "Evidence showing that the nonparent would be a better custodian of the child does not suffice, and close calls should be decided in favor of the parent." In re M.J.C.B., Jr. , 2014 WL 6433378, at *1. The nonparent, in this case the Department, may rebut the presumption with "affirmative proof, by a preponderance of the evidence, that appointing the parent as managing conservator would significantly impair the child, either physically or emotionally." Id. at *2.
Courts generally require the nonparent to "present evidence that a parent's conduct would have a detrimental effect." Id. That evidence must support a logical inference that the parent's "specific, identifiable behavior or conduct will probably result in the child being emotionally impaired or physically harmed." Whitworth v. Whitworth , 222 S.W.3d 616, 623 (Tex. App.-Houston [1st Dist.] 2007, no pet.). This link between the parent's conduct and harm to the child may not be based on evidence which merely raises a surmise or speculation of possible harm. Id. Such evidence usually includes a showing of "physical abuse, severe neglect, abandonment, drug or alcohol abuse, or very immoral behavior on the part of the parent." In re R.L. , Nos. 01-16-00851-CV, 01-16-00852-CV, 01-16-00875-CV, 2017 WL 1496955, at *15 (Tex. App.-Houston [1st Dist.] Apr. 21, 2017, no pet.) (mem. op.).
A parent shall be named a child's managing conservator unless the court finds, as here, that such appointment would significantly impair the child's physical health or emotional development. See Tex. Fam. Code Ann. § 153.131(a). As support for his contention that the trial court abused its discretion, Father asserts the Department failed to present evidence that he could not adequately care for his child or that appointment of Father as managing conservator would significantly impair Fay's physical health or emotional development.
Father testified that after Fay was removed he visited Fay anytime he had a chance to come home. Father visited Fay ten times in 2011. In 2012, he could not remember how many times he visited. Further, as discussed earlier, Father's time away from Fay after September 6, 2013, was not voluntary. Father testified that he depended on the lawyer he hired to help him get possession of Fay. Father also testified that he would like Fay to be back with him or his family.
The caseworker testified it was in Fay's best interest to remain with her foster family because she was bonded with them and in a secure, stable, and loving environment. The caseworker acknowledged her best interest determination was based on Fay's bond with the foster family. A best interest determination should not be solely based on evidence that a child may be better off living elsewhere. See In re A.H. , 414 S.W.3d 802, 807 (Tex. App.-San Antonio 2013, no pet.).
The psychologist testified as to Fay's emotional well-being. Her testimony included that when she originally began seeing three-year-old Fay, her behaviors of echolalia and her inability to attach were likely related to the intermittent unavailability of her caregiver. She opined Father had endangered Fay's emotional well-being through his inaction. Fay had been in her current placement over four years at the time of trial. The psychologist testified that Fay, who was seven years old, had formed a secure attachment to her foster parents and her social setting. The psychologist testified Fay has been able to *771 psychologically heal during her placement with the foster family. The record contained evidence that Fay has greatly improved since placement with the current foster family. The record reflects that Fay's placement is stable and meeting her needs.
Fay's thought of family did not include anyone beyond the foster family and Fay did not know her biological family. During a session, Fay told the psychologist she was "born in a hospital and that this lady carried her in her tummy and that when she was born in the hospital, the neighbor came and picked her up and took her to her family the [foster family]." It is unclear whether Fay has been told why her last name is not the same as her foster family. The psychologist believed any change in her placement would be detrimental to her emotional well-being. She also testified Fay needs to be cared for by the person who will parent her and to be in an environment that helps her grow psychologically. The psychologist did not feel Father could provide this type of environment being gone five to six weeks at a time, several times a year.
The evidence before us is similar to several cases in which the courts found the evidence insufficient to rebut the presumption set out in section 153.131. See Tex. Fam. Code Ann. § 153.131.
In Gray v. Shook , 329 S.W.3d 186, 197 (Tex. App.-Corpus Christi 2010)aff'd in part, rev'd in part on other grounds , 381 S.W.3d 540 (Tex. 2012), the court found the evidence of possible harm to the child was simply the "uprooting" of the child rather than a specific, identifiable act or omission or conduct of the father. While the evidence did show the child suffered from "some separation anxiety" and the anxiety had caused "recurring vomiting in the past," this evidence was not so significant as to meet the requisite standard. The court found the evidence was insufficient to meet the heavy burden to overcome the statutory presumption because it raised "only speculative harm." Id. at 198.
Likewise, in In re M.J.C.B., Jr. , 2014 WL 6433378, at *2, the court concluded none of the four witnesses who testified at trial offered any evidence that would indicate the children's physical or emotional development would be significantly impaired if the father was appointed managing conservator even though the children had lived with the maternal grandmother "on and off" throughout most of their lives and the children did not know the father. Id. The evidence there also showed the father was "financially stable, was gainfully employed, and had a home ... that had been approved by the Department after a home study was conducted." Id. at *3. The court determined the trial court abused its discretion in failing to appoint the father as a managing conservator of the children. Id. at *3.
The court in In re A.D.A. , No. 11-12-00002-CV, 2012 WL 4955270, at *3 (Tex. App.-Eastland Oct. 18, 2012, no pet.) (mem. op.), relied in part on Gray in reaching the conclusion that the evidence before it was insufficient to overcome the presumption. In A.D.A. , a psychologist was called to testify about the child's psychological, counseling, and special education needs. Id. The psychologist testified that removal of the child from familiar surroundings would be "traumatic" and "could set him back from where he is today." Id. The psychologist also described accidents the child had when he was "very anxious and nervous." Id. Despite this testimony, the court concluded there was no evidence of acts or omissions by the father that would significantly impair the physical health or emotional development of the child. Id. at *4-5. The appellate court determined the nonparent failed to present *772 evidence sufficient to rebut the parental presumption and the trial court abused its discretion in finding otherwise. Id. at *5.
In this case, absent affirmative evidence of an act or omission by Father that would cause harm, the parental presumption cannot be overcome. See id. at *4. We find no such evidence in the record. The harm reflected by the psychologist's testimony in this case is similar to the speculative harm in A.D.A. The psychologist had not observed Fay and Father interact. Additionally, the record did not contain evidence of a placement with Father which resulted in emotional harm to Fay. The harm to Fay is the "uprooting" itself rather than some conduct by Father. The relationship between a parent and child is protected by the statutory presumption that custody by the natural parent is in the best interest of the child. Before a court awards custody to a nonparent, there must be evidence of conduct or actions of the parent that cause harm to the child. See Lewelling , 796 S.W.2d at 167. Thus, the trial court abused its discretion when it found that appointing the Department as sole managing conservator would significantly impair the child's physical health or emotional development. See A.D.A. , 2012 WL 4955270, at *4.
Reviewing the entire record under the requisite standards, we conclude that the evidence does not support a finding that appointment of Father as sole managing conservator would significantly impair Fay's physical health or emotional development. The trial court abused its discretion in appointing the Department managing conservator of Fay. We sustain Father's third issue.
CONCLUSION
We conclude the evidence is legally insufficient to support the termination of Father's parental rights pursuant to subsections (C), (E), (F), and (N). We further conclude the evidence does not support the trial court's finding that appointment of Father as sole managing conservator would significantly impair Fay's physical health or emotional development. Accordingly, we reverse that portion of the trial court's judgment terminating Father's parental rights to Fay, and render judgment denying the Department's request to terminate Father's parental rights. We further reverse the order of the trial court naming the Department sole managing conservator and remand to the trial court for a determination of conservatorship.
We affirm the remainder of the trial court's judgment terminating Mother's parental rights.

Mother did not appeal the termination of her parental rights.

We use pseudonyms to refer to appellant, his child, and family members in this case. See Tex. Fam. Code Ann. § 109.002(d) ; Tex. R. App. P. 9.8.

The decree indicated Father was not notified and did not appear.

The order is not in our record; however, it was discussed at trial and the trial court took judicial notice of it during the trial. See In re K.F. , 402 S.W.3d 497, 505 (Tex. App.-Houston [14th Dist.] 2013, pet. denied) ("A trial court may take judicial notice of the records in its own court filed in the same case, with or without the request of a party.")

Father testified with the assistance of a translator as he speaks Vietnamese.

Father testified he earns up to $60,000 a year as a shrimper.

There is evidence Father visited Fay during the first removal, which the Department does not contest.

The Department presented no evidence about Father's visits or absences prior to that time.

In re U.P. , 105 S.W.3d at 235 ; In re M.J.M.L. , 31 S.W.3d 347 (Tex. App.-San Antonio 2000, pet. denied) ; Edwards , 946 S.W.2d 130 ; Dupree v. Tex. Dep't of Protective and Regulatory Servs. , 907 S.W.2d 81 (Tex. App.-Dallas 1995, no writ) ; In re J.W.S. , No. 06-14-00018-CV, 2014 WL 3013352 (Tex. App.-Texarkana July 2, 2014, no pet.) (mem. op.); In re S.K.A. , No. 10-08-00347-CV, 2009 WL 2645027 (Tex. App.-Waco Aug. 19, 2009, no pet.) (mem. op.); In re A.L.W. , No. 12-04-00263-CV, 2005 WL 2404115 (Tex. App.-Tyler Sept. 30, 2005, no pet.) (mem. op.); In re E.J.P. , No. 06-04-00131-CV, 2005 WL 2138573 (Tex. App.-Texarkana Sept. 7, 2005, no pet.) (mem. op.); In re A.J.K. , No. 05-99-00032-CV, 1999 WL 415385 (Tex. App.-Dallas June 23, 1999, no pet.) (mem. op.).

Father acknowledged he had not sent financial support to anyone since 2014, but stated he was not asked to provide financial support and he was not provided information about where to send support.

According to the service plan, for a family who did not know the child before foster care to adopt the child, the court has to end parental rights of both parents.

The Department claims that the acknowledgement of paternity in the record, signed the day after Fay's birth in 2010, was not "issued" until 2013. However, it appears that the record was prepared in 2010, but a copy was created in 2013. The hospital where Fay was born would not have been permitted to list Father on the birth certificate in 2010 without a valid acknowledgement of paternity form. See Tex. Health & Safety Code Ann. § 192.005. The hospital is responsible for filing both documents with the correct authority. See itation index="101" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20192.005">id. at § 192.012.