**Affirmed and Memorandum Opinion filed December 18, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00530-CV

## IN THE INTEREST OF J.J.A., A.A., L.A., D.L.C., JR., CHILDREN

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2016-06384J**

## M E M O R A N D U M   O P I N I O N

Appellant J.A. ("Father") appeals the trial court's final decree terminating his parental rights and appointing the Department of Family and Protective Services ("Department") as sole managing conservator of his children J.J.A. ("Jason"), A.A. ("Anthony"), and L.L.A. ("Lauren").[1] On appeal Father challenges the legal and factual sufficiency of the evidence to support (1) the predicate grounds under which the trial court terminated his parental rights, and (2) the trial court's finding that

---

[1]We use pseudonyms to refer to appellant, the children, and other family members. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8.

termination was in the children's best interest. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The trial court terminated the parental rights of Father and R.K. ("Mother") as to Jason, Anthony, and Lauren and as to Mother's other son D.C. ("Daniel"). Mother has not appealed.

### A. Pretrial Removal Affidavit

In March 2016, the Department received a referral alleging Mother's physical abuse of Anthony. The Department's caseworker, Patricia Smith, initiated an investigation. Smith noted that Anthony had a black eye. The next day at school, Anthony informed another Department investigator that Mother hit him in the face with her cellular telephone. Mother denied hitting Anthony and claimed his black eye resulted from rough-housing with Jason.

In May 2016, both Father and Mother agreed to participate in Family Based Safety Services, which included parenting classes. A month later, Father informed the Department that they had not yet begun parenting classes. In October 2016, Mother moved into her own residence with the children, without Father.

The next month the Department removed the children from Mother's care due to another reported incident of physical abuse by Mother and placed the children with their maternal grandmother ("Grandmother"). A week after the Department removed the children from Mother's care, Father and Mother went to Grandmother's home. Mother allegedly shoved Grandmother to the ground and took Daniel out of the home. Mother returned Daniel to Grandmother the next day.

The Department filed suit seeking termination of Mother's and Father's rights to the children. After an adversarial hearing, the Department removed the children from Grandmother's home and placed them in foster care. The Department placed

Lauren and Daniel together in one home and Jason and Anthony together in another.

## B. Trial

### 1. Documentary Evidence

At trial, before any witness testimony, the trial court admitted the following into evidence: (1) Father's family service plan; (2) Mother's family evaluation from the Children's Crisis Care Center ("Four C's Assessment") (3) a 2014 complaint of criminal assault by Mother against Father; (4) a 2012 complaint of criminal assault by Mother against Father; (5) Father's 2013 felony conviction of possession of a controlled substance; (6) Father's 2002 plea of guilty to the charge of being a felon in possession of a firearm; (7) Father's 2002 plea of guilty to the charge of possession of cocaine; (8) drug test results for Father stating that Father did not have enough hair on his body for an adequate sample; (9) drug test results for Father stating that Father did not have enough finger nail or toe nail specimens for an adequate sample; (10) an April 2017 urinalysis drug-test result for Father showing negative results; (11) a permanency report submitted to the trial court on September 27, 2017; (12) Father's certificate of completion of individual therapy on April 18, 2017; (13) Father's certificate of completion of substance abuse treatment on May 9, 2017; (14) a permanency conference plan, dated May 15, 2017; (15) Father's physical therapy evaluation, dated April 8, 2018; (16) Father's urinalysis drug-test results from January 2017, showing negative results; and (17) Father's successful discharge summary from the Wellness Counseling Center of Texas, dated May 9, 2017.

### 2. Testimony

At trial, the Department's caseworker, Shabrena Williams, testified about the following statements Mother made on her Four C's assessment:

- Mother stated that she began her relationship with Father when she was

seventeen or eighteen years old and Father was in his thirties.

- Mother claimed Father introduced her to drugs and she eventually became addicted.

- Mother explained that her 2012 assault charge arose from an incident of self-defense against Father. According to Mother, a friend of Father's made a false report accusing her of assaulting Father.

- Mother stated that Father kept her under the influence of drugs during the entire course of their ten-year relationship as a means of controlling her.

- Mother stated that Father began abusing her when she tried to end the relationship.

- Father had Mother arrested for assault in 2014 when he found out she had an abortion.

Williams explained that she has been unable to work with Father because he had a debilitating stroke in October 2017.[2] Due to the stroke, Father became unable to talk or walk without assistance. At the time of trial, Father was awaiting discharge from the hospital into a nursing home. According to Williams, Father is under Adult Protective Services because he lacks the ability to make financial decisions. Currently, Father's sister is making financial and medical decisions for Father. Williams testified that while Father has completed all his services, she does not know what he will be able to do to care for the children in the future, or if he can visit the children without assistance.

Williams confirmed that during the first half of 2017 the Department's goal

---

[2] According to Father's brief, he suffered the stroke on or about August 30, 2017.

was to reunite Father with the children and make him their permanent managing conservator. Williams testified that the Department's goal changed at some point before Father's stroke and that the change was communicated to Father before his stroke. Williams confirmed that before Father went into the hospital, he knew that his parental rights likely would be terminated. Williams testified that the Department changed its goal due to its concern about violence between Father and Mother and Father's lack of fingernail or hair follicle specimens for drug testing.

According to Williams, Father stated on his psychosocial assessment that he has fourteen children.[3] Williams testified that she does not believe Father has brought up any of them. Williams testified that during the pendency of this case, Father was incarcerated for assaulting Grandmother, though Williams later indicated that the report of assault was found to be false. According to Williams, Father owed $21,000 in unpaid child support.

Williams further testified that she observed Father's visits with the children before Father's stroke. Williams stated the visits were appropriate and the children made no outcries afterwards. Williams confirmed that before the Department initiated this case, there had been no Department investigations regarding any of Father's children.

The court-appointed child advocate Robyn Drake testified that the four children living in foster care have sibling visits and attend one another's birthday parties. According to Drake, the two sets of foster parents share an excellent working relationship. The children have told Drake that they want to stay in their foster homes and want to be adopted by their foster parents, as long as they can continue to see their siblings.

---

[3] Father states in his brief that he has thirteen children.

Lauren's foster mother testified that Lauren, who is in therapy, is doing "great." If the court were to terminate parental rights, the foster mother would continue to ensure Lauren has visits with Anthony and Jason. The foster mother believes it is important for the siblings to know one another.

Mother testified about meeting Father when she was nineteen years old. According to Mother, Father was a drug-dealer and Mother would help him with "bagging the drugs." According to Mother, she was a straight-A student with a strict upbringing before she met Father. Mother began using drugs after she met Father, and Father worked as a drug-dealer throughout the entire course of the children's lives beginning with Mother's pregnancies.

Following arguments by counsel and a recommendation by the attorney for the children that Father's parental rights be terminated, the trial court determined that Father's parental rights to Jason, Anthony, and Lauren should be terminated pursuant to the predicate findings under Family Code sections 161.001(b)(1)(D), (E), and (O) and that termination of parental rights was in these children's best interest. The trial court signed a final decree terminating parental rights and appointing the Department as sole managing conservator.

## II. ISSUES AND ANALYSIS

In his first three issues Father argues the evidence is legally and factually insufficient to support the termination finding under sections 161.001(b)(1)(D), (E), and (O) of the Texas Family Code. Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1); and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2) (West Supp. 2018); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

**A. Standard of Review**

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.–Houston [14th Dist.] 2012, no pet.). Despite the constitutional magnitude of parental rights, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."). Due to the severity and permanency of the termination of parental rights, the law imposes a heightened burden of proof, requiring clear and convincing evidence. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.–Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a termination case, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *See In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 25. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh

all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

### B. Predicate Termination Grounds

The trial court found Father "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E). "Endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A parent endangers a child when the environment creates a potential for danger and the parent knows of the danger but disregards it. *In re S.M.L.*, 171 S.W.3d at 477.

Termination of parental rights under subsection 161.001(b)(1)(E) must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Although

'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re C.J.S.*, 383 S.W.3d 682, 688 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also In re J.O.A.*, 283 S.W.3d at 336 (holding endangering conduct is not limited to actions directed toward the child). Danger to the child's well-being may be inferred from parental misconduct alone, and courts may look at parental conduct both before and after the child's birth. *Id.* ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Father contends the Department failed to produce clear and convincing evidence that he engaged in a voluntary, deliberate, and conscious course of conduct that endangered the physical and emotional well-being of his children because the Department did not remove the children as a result of a direct act of Father. Father also contends that the Department determined he was fit to be permanent managing conservator for a period of time, even knowing his criminal background, but that the Department changed its goals as a result of his stroke. Father argues he was deprived of his parental-rights without due process of law when the Department changed its goal for the children after Father's stroke.

The Department asserts that Father's lengthy history of criminal conduct, including the sale of illegal drugs throughout the children's lives, supplied the trial court with legally and factually sufficient evidence to conclude Father endangered the children under subsection (E). In response to Father's due-process contention,

9

the Department maintains Father's due process rights were not infringed because every amended petition it filed stated its intent to terminate Father's rights. Moreover, the Department contends Father waived this issue.

*1. Due Process*

Father waived his due process complaint by failing to raise it before the trial court. Due process violations must be raised in the trial court for them to be preserved on appeal. *In re F.E.N.*, 542 S.W.3d 752, 768 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The record shows the permanency report indicating that the Department changed its goal for the children was submitted to the trial court at a permanency hearing on October 17, 2017. Father was represented through counsel and received notice of the change. Father filed no objections to this report. Father was on notice, through counsel, from October 17, 2017, until trial on May 3, 2018, that the Department intended to seek termination of his parental rights but voiced no complaints. Furthermore, evidence in the record shows that the Department caseworker testified that Father was informed before his stroke that the Department intended to seek termination of his parental rights. We conclude that Father has waived his due process complaint.

Father also waived his due process complaint by failing to properly brief it. He states he was denied due process both within his sufficiency and best-interest finding arguments, but Father does not develop the argument or explain how he was denied due process. An appellant has a duty to cite specific legal authority and to provide legal argument based upon that authority. Tex. R. App. P. 38.1(h); *In re A.J.H.*, No. 14-03-01016-CV, 2004 WL 424093, at *6 (Tex. App.—Houston [14th Dist.] Mar. 2, 2004, no pet.) (mem. op.). It is not the court's role to fashion a legal argument and supply the authorities to support it for an appellant when the appellant has failed to do so. *In re R.H.W. III*, 542, S.W.3d 724, 742 (Tex. App.—Houston

[14th Dist.] 2018, no pet.). Accordingly, we conclude that Father has failed to adequately brief any argument in support of this issue. *See* Tex. R. App. P. 38.1(h); *id*.

### 2. *Endangerment*

As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re J.O.A.*, 283 S.W.3d at 345. Evidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent, may establish an endangering course of conduct. *In re C.A.B.*, 289 S.W.3d 874 at 886. Intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child. *In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Criminal offenses and drug activity can constitute endangerment because they significantly harm the parenting relationship, even if the criminal conduct does not occur in the child's presence. *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The trier of fact also may consider evidence of domestic violence as evidence of endangerment under subsection (E). *See In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.).

Mother testified that Father was a drug dealer when she met him and throughout the course of their relationship together, including the entirety of the children's lives. Father was convicted of felony possession of a controlled substance in May 2013—one year after Lauren's birth and five years after Jason's birth. Father's drug dealing behavior persisted over many years. The record reflects Father was convicted of delivery of a controlled substance as far back as 1996. Father plead "guilty" to possession of a controlled substance in 2002. The year before, Father had been convicted of possession of a firearm while on probation from the 1996

conviction for delivery of a controlled substance. Moreover, Father never provided a hair or fingernail sample for a drug test, which the Department indicated would alleviate some of its concerns. The trial court reasonably could have concluded that Father's course of conduct as a life-long drug-dealer subjected the children to a life of uncertainty and instability which endangered their well-being.

Moreover, Mother averred in her Four C's assessment that Father was the aggressor in the couple's relationship and that she was defending herself on the occasions when she was arrested for assaulting Father. Even if the trial court did not believe Mother's claims that Father was the aggressor, the trial court reasonably could have found that Father was endangering the children by leaving them with Mother, whom Father knew had a propensity to be violent. The trial court reasonably could have concluded that Father endangered the children by subjecting them to domestic violence, whether Father or Mother was the aggressor. *See In re E.O.R.*, No. 04-18-00248-CV, 2018 WL 5808293, at \*4-5 (Tex. App.—San Antonio Nov. 7, 2018, no pet. h.) (finding domestic violence a contributing factor in an endangerment finding where the parent in question was not the violent parent).

Considered in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's termination of Father's parental rights under section 161.001(b)(1)(E). Likewise, viewing the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(E). Accordingly, we conclude the evidence is factually sufficient to support the 161.001(b)(1)(E) finding.

In light of our conclusion regarding the trial court's finding on subsection (E), we need not make a determination as to its findings on subsections (D) or (O). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We overrule Father's first three issues.

## C. Best Interest of the Children

In his fourth issue, Father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the children's best interest. Texas courts presume that keeping children with their natural parent serves the children's best interest. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The Department carries the burden of rebutting that presumption. *Id.* Proof of acts or omissions under section 161.001(b)(1) is probative of the issue of the children's best interest. *See In re S.R.*, 452 S.W.3d at 366. The considerations the trier of fact may use to determine the best interest of the children, known as the *Holley* factors, include:

(1) the desires of the children;

(2) the present and future physical and emotional needs of the children;

(3) the present and future emotional and physical danger to the children;

(4) the parental abilities of the persons seeking custody;

(5) the programs available to assist those persons seeking custody in promoting the best interest of the children;

(6) the plans for the children by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parents' acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the children with a safe environment). A best-interest finding does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72.

## 1. The Desires of the Children

The child advocate testified that the children want to be adopted by their foster parents providing they can continue their sibling visits. The foster mother testified that she would continue the sibling visits if the court terminated parental rights.

## 2. Present and Future Needs

Williams testified the children have great bonds in their current placements. According to Williams, each of the children enjoy stable, nurturing environments, and their needs are being met. Williams testified that both sets of foster parents are willing to adopt the children. Father's stroke has rendered him physically and mentally unable to attend to the children's needs. It is unknown whether Father's physical or mental capacity will ever be restored.

## 3. Parenting Abilities and Family Support

The evidence shows Father has contributed little to the upbringing of his thirteen children. No evidence shows that Father has ever taken charge of Jason, Anthony, and Lauren without Mother's help. Moreover, following his stroke, Father is unable to walk, talk, or make medical or financial decisions for himself. Father argues in his appellate brief that his other children would help rear Jason, Anthony, and Lauren, but no such evidence was before the trial court.

## 4. The Stability of the Home or Proposed Placement

Father is moving from the hospital into a nursing home for an indefinite stay. Father owes $21,000 in back child support. The foster parents have been caring for the children for almost two years without any issues. The children are well-bonded and see one another on a regular basis.

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that

14

termination of Father's rights is in the best interest of Jason, Anthony, and Lauren. *See In re L.G.*, No. 04-15-00038-CV, 2015 WL 4113620 at *3 (Tex. App.—San Antonio July 8, 2015, no pet.) (stating that a parent's mental capacity is probative on the issue of best interest). We overrule Father's fourth issue.

## III. CONCLUSION

Having concluded the evidence is legally and factually sufficient to support the trial court's finding terminating Father's parental rights under section 161.001(1)(E) and that termination is in the children's best interest, we affirm the trial court's judgment.


/s/ Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Jamison and Donovan.