

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00646-CV

**IN THE INTEREST OF N.A.V.**, P.A.V., A.J.V., L.V., and J.G., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-PA-00244
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:　Irene Rios, Justice

Sitting:　　　Patricia O. Alvarez, Justice
　　　　　　Irene Rios, Justice
　　　　　　Liza A. Rodriguez, Justice

Delivered and Filed: March 17, 2020

AFFIRMED

This is an appeal from a judgment terminating Mother's and Father's parental rights to their five children, N.A.V., P.A.V., A.J.V., L.V., and J.G. ("the children").[1] In five issues, Mother challenges the sufficiency of the Department of Family and Protective Service's ("the Department") pleadings and the sufficiency of the evidence to support the trial court's judgment. In one issue, Father challenges the sufficiency of the evidence to support trial court's judgment. We affirm.

---

[1] To protect the identity of the minor children in an appeal from a judgment terminating parental rights, we refer to the children's parents as "Mother" and "Father," to the children by their initials, and to one of the children's caretakers by an alias, "Gina." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

**BACKGROUND**

This appeal arises from the Department's second suit to terminate Mother's and Father's parental rights to the children. The first termination suit, which the Department filed in February 2015, resulted in an agreed judgment appointing the Department permanent managing conservator and Mother and Father possessory conservators. Signed on June 17, 2016, the agreed judgment ("the prior judgment") states that all relief not expressly granted was denied, and that the Department "waived all termination grounds for purposes of this trial" and "reserve[d] the right to re-plead those grounds, if necessary, in a modification proceeding."

On January 30, 2018, the Department filed a second suit seeking to terminate Mother's and Father's parental rights. In its amended pleadings, the Department asked the trial court to terminate Mother's and Father's parental rights based on both section 161.001 and section 161.004 of the Texas Family Code. The trial court held a non-jury trial. At trial, Mother and Father did not appear in person, but both of them were represented by counsel. The Department presented testimony from three witnesses: a caseworker who had handled the case before the prior judgment and two caseworkers who had handled the case after the prior judgment.

*Events from the February 2015 Removal to the June 17, 2016 Judgment*

The evidence showed that the children were removed from Mother's and Father's home in February 2015 because of domestic violence and drug use by both parents. The three oldest children, who were four, five, and six years old, were placed with a relative. The two youngest children, a two-year-old and a newborn, were placed with another relative. The Department prepared service plans for both parents; however, before Father participated in any of his services, he went to prison to serve his sentence for a family violence conviction. Mother completed some but not all the services in her service plan.

After the children were removed from Mother's and Father's home, the oldest child, who was six years old at the time, told a caseworker that she and her siblings had frequently seen their parents have sex. The child also engaged in sexual behavior which she directed at her siblings. Additionally, the three oldest children behaved aggressively and had violent tantrums. The Department arranged for the oldest children to participate in therapy. Maintaining funding for the children's therapy was the reason the Department decided not to pursue termination of Mother's and Father's parental rights in its first suit.

The prior judgment granted Mother and Father visitation "at times mutually agreed to in advance by the parties" and, "in the absence of mutual agreement," visitation "supervised at KidShare or similar facility." The visitation order further stated, "All visits shall occur at the recommendation of the therapist(s) for the children."

*Events from the June 17, 2016 Judgment to the September 11, 2019 Judgment*

About six months after the prior judgment, the Department conducted a formal investigation into allegations of sexual abuse involving some of the children. The Department ultimately concluded that the three oldest children had been sexually abused and that the perpetrator of the abuse was Father.

The three oldest children did not remain in their initial placement with a relative. By the time of trial, they had been placed in four different homes, including the homes of relatives and foster caregivers. The three oldest children participated in therapy until they were discharged in August 2018. However, they returned to therapy in August 2019. The two youngest children had more consistency, remaining in their initial placement with a relative until the second lawsuit went to trial.

When Father was released from prison, the Department prepared a service plan, which required Father's participation in a drug assessment, domestic violence classes, and parenting

classes. The Department explained the service plan to Father, but he failed to complete any of the services in the plan.

In the more than three years that elapsed between the prior judgment and the termination trial, Mother gave birth to three more children. The Department received a referral for these children and opened a case for them. After the Department provided family-based services to Mother, the case was closed, and the children in that case continued to live with Mother.

Meanwhile, two caseworkers told Mother that she was permitted to visit the children in the present case according to the terms of the prior judgment; however, Mother never exercised visitation. Mother refused to allow a caseworker to come to her home to see if it would be an appropriate place for visits to take place. Mother warned the caseworker that she would never allow her to see the children who were currently living in her home.

Two weeks before trial, Mother told a caseworker that she felt that the children in the present case would be better off without her because she had not seen them in a long time and she "was still working on herself" and "becoming a better person."

After hearing the evidence, the trial court signed a judgment terminating Mother's and Father's parental rights as to all five children. The judgment shows the trial court terminated parental rights based on section 161.001 of the Texas Family Code. In the judgment, the trial court found by clear and convincing evidence that Mother had constructively abandoned the children; had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children; and had used a controlled substance in a manner that endangered the health or safety of the children and either had failed to complete a court-ordered substance abuse treatment program or after the completion of a court-ordered substance abuse program had continued to abuse a controlled substance. *See* TEX. FAM. CODE § 161.001(b)(1)(N),(O),(P). The trial court found by clear and convincing evidence that Father had

knowingly placed or allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; had engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being; had failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children; and had used a controlled substance in a manner that endangered the health or safety of the children, and either had failed to complete a court-ordered substance abuse treatment program or after completion of a court-ordered substance abuse program had continued to abuse a controlled substance. *See id*. § 161.001(b)(1)(D),(E),(O),(P). Finally, the trial court found by clear and convincing evidence that the termination of Mother's and Father's parental rights would be in the children's best interest. *See id*. § 161.001(b)(2).

Both Mother and Father appeal the judgment terminating their parental rights.

### ISSUES PRESENTED ON APPEAL

In her first issue, Mother argues the trial court erred in modifying the prior judgment appointing her possessory conservator because the Department failed to plead a proper basis for modification and the evidence was undisputed that nothing had changed. In her second, third, and fourth issues, Mother argues the evidence was legally or factually insufficient to support the findings of statutory grounds under section 161.001(b)(1). *See* TEX. FAM. CODE § 161.001(b)(1)(N),(O),(P). In her fifth issue, Mother argues the evidence was legally or factually insufficient to support the finding that termination of her parental rights was in the children's best interest. *See id*. § 161.001(b)(2).

In his sole issue, Father argues the evidence was legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the children's best interest. *See id*.

**TERMINATION OF PARENTAL RIGHTS AFTER A JUDGMENT DENYING TERMINATION**

In her first issue, Mother contends the trial court erred by modifying the prior judgment "because the Department failed to plead a proper basis for said modification and the evidence was undisputed that nothing had changed." Mother's argument is based on the faulty premise that the Department was required to plead and prove a material and substantial change in circumstances since the prior judgment denying termination.

"Termination can be achieved after a prior order denying termination of the parent-child relationship through either section 161.004 or section 161.001." *In re H.L.H.*, No. 10-16-00254-CV, 2018 WL 1321750, at *13 (Tex. App.—Waco March 14, 2018, no pet.). When the Department seeks termination after a prior judgment denying termination, a trial court may terminate parental rights (1) under section 161.001, which requires clear and convincing evidence of acts or omissions having occurred since the prior denial of termination, or (2) under section 161.004, which requires clear and convincing evidence of an act or omission under section 161.001 that occurred prior to the denial and evidence of a material and a substantial change since the prior denial of termination.[2] *In re A.L.H.*, 515 S.W.3d 60, 89 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *In re J.R.I.*, No. 04-14-00102-CV, 2014 WL 4346291, at *1 (Tex. App.—San Antonio 2014, no pet.); *In re K.G.*, 350 S.W.3d 338, 352 (Tex. App.—Fort Worth 2011, pet. denied) (rejecting Mother's contention that section 161.004 provided the only vehicle for terminating her parental rights after an earlier judgment denying termination). Therefore, to succeed in terminating Mother's parental

---

[2]Section 161.004 of the Texas Family Code provides that after the rendition of an order that previously denied termination of the parent-child relationship, a trial court may terminate the parent-child relationship if: (1) the petition seeking to terminate parental rights is filed after the date the order denying the termination was rendered; (2) "the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;" (3) "the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered;" and (4) the "termination is in the best interest of the child." *See* TEX. FAM. CODE § 161.004(a). Under section 161.004, the trial court may consider evidence presented at hearings in a previous termination suit involving the same parent and child. *Id.* § 161.004(b).

rights to the children, the Department was not required to plead and prove a material and substantial change in circumstances.

The Department's live pleading plainly shows it was seeking termination of Mother's parental rights under both section 161.001 and section 161.004. This pleading separately alleges the statutory elements for termination under both section 161.001 and section 161.004. And, while the Department's live pleading does not expressly mention section 161.004, it does expressly mention section 161.001.[3] Furthermore, the judgment shows that the trial court terminated Mother's parental rights based only on section 161.001, which does not require proof of a material and substantial change in circumstances. *See* TEX. FAM. CODE § 161.001(b).

To the extent Mother's first issue complains the trial court erred because the Department failed to prove a material and substantial change in circumstances, her argument lacks merit. Evidence of a material and substantial change in circumstances is necessary only when the trial court terminates parental rights under section 161.004. Here, the trial court's judgment shows that it terminated Mother's parental rights solely under section 161.001. Therefore, the Department was not required to present evidence of a material and substantial change in circumstances. We overrule Mother's first issue.

---

[3]Because Mother did not file written special exceptions alleging a defect in the Department's pleadings, she has waived her complaint about the sufficiency of the Department's pleadings. *See* TEX. R. CIV. P. 90 (requiring a party to specially except to pleading defects before the judgment is signed); TEX. R. APP. P. 33.1(a) (providing complaints not timely raised in the trial court are not preserved for appellate review); *In re A.A.M.*, 464 S.W.3d 421, 425 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (concluding father waived any complaint about the perceived lack of notice from the omission of a specific reference to section 161.004 in the pleadings when he failed to specially except to the pleadings). Therefore, to the extent Mother complains about a defect in the Department's pleadings, her complaint is not preserved for appellate review.

**LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE—STATUTORY GROUNDS**

In her second, third, and fourth issues, Mother argues the evidence was legally and factually insufficient to support each of the trial court's statutory ground findings under section 161.001. *See* TEX. FAM. CODE § 161.001(b)(1)(N),(O),(P).

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove, by clear and convincing evidence, at least one of the statutory grounds in section 161.001(b)(1) and that termination is in the children's best interest. *See id.* §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Here, the trial court found, by clear and convincing evidence, three separate statutory grounds to terminate Mother's parental rights. The trial court also found, by clear and convincing evidence, that termination of Mother's parental rights was in the children's best interest.

When reviewing the sufficiency of the evidence to support a judgment terminating parental rights, we apply the well-established standards of review for legal and factual sufficiency. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency). Both sufficiency review standards require us to determine if the factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

After a trial court has previously rendered a judgment denying a petition to terminate the parent-child relationship, a judgment terminating the same parent-child relationship under section 161.001 requires evidence of acts or omissions that occurred after the prior judgment denying termination. *In re A.L.H.*, 515 S.W.3d at 89; *In re J.R.I.*, 2014 WL 4346291, at *1. The Amarillo court of appeals explained:

[W]hen section 161.004 does not appear to have served as a basis for the termination order . . . we are unable to consider the previously presented evidence of acts or omissions occurring prior to the trial court's order denying termination; we cannot evaluate the evidence against statutory elements which did not form a basis for the trial court's order of termination. Instead, our review of the evidence must be limited to evidence of predicate acts or omissions under section 161.001 which would support termination and which have occurred or come to pass in the time between the trial court's [previous] order denying termination and the hearing [] leading to the instant appeal. That is, we review the sufficiency of the evidence presented under the specific statutory grounds found by the trial court in its termination order.

*In re D.N.*, 405 S.W.3d 863, 871 (Tex. App.—Amarillo 2013, no pet.) (internal quotations omitted).

Because here there was a prior judgment denying termination of the same parent-child relationships, the evidence we consider in our sufficiency review of the statutory grounds is limited to Mother's acts and omissions occurring after the prior judgment denying termination. *See id.* (limiting the evidence included in a sufficiency review to predicate acts or omissions occurring after a prior judgment denying termination); *In re F.M.E.A.F.*, 572 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (recognizing that because the Department had asked for termination under both section 161.001 and section 161.004, and the trial court had made findings as to both statutes, the record for sufficiency analysis included evidence pre-dating the prior order denying termination).

In her second issue, Mother argues the evidence was legally and factually insufficient to support the trial court's finding that she constructively abandoned the children under section 161.001(b)(1)(N). To terminate the parent-child relationship based on section 161.001(b)(1)(N), the trial court must find by clear and convincing evidence that the parent has:

constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department [] for not less than six months, and:

(i)     the department has made reasonable efforts to return the child to the parent;

(ii)     the parent has not regularly visited or maintained significant contact
with the child; and

(iii)    the parent has demonstrated an inability to provide the child with a
safe environment.

TEX. FAM. CODE § 161.001(1)(b)(N).

The following evidence was presented with respect to Mother's constructive abandonment of the children. A Department caseworker, Diana Torres, testified that she became involved in this case after the prior judgment had been rendered and Mother was appointed possessory conservator of the children. Torres said she was the possessory managing conservator caseworker. In July 2016, about a month after the prior judgment was rendered, Mother called Torres and asked her if she could visit the children. Torres told Mother that she could visit the children. Torres explained to Mother that the visits could take place at KidShare and that Mother was responsible for contacting KidShare and scheduling the visits. Torres also told Mother to talk to her lawyer about visiting the children and to follow the visitation order in the prior judgment. Torres remained on the case for about two years, but Mother never called her again to ask about visiting the children. According to Torres, Mother never scheduled a visit with the children through KidShare.

The subsequent caseworker, Norma Rodriguez, testified that she handled the case after Torres. Rodriguez testified the children were discharged from therapy in August 2018. At the time, the therapist's recommendation was to allow Mother to visit the children, but not to allow Father to visit them. Therefore, according to Rodriguez, Mother could have visited the children. Rodriguez testified that for a three-year period, from June 2016 to July 2019, Mother did not ask about visiting the children. In the year Rodriguez was assigned to the case, she had monthly phone contact with Mother. Mother would ask how the children were doing and would ask to have a video chat with them, but Mother did not ask to visit the children in person. In July 2019, after all the children were living in placements in San Antonio, Mother asked Rodriguez how she could

visit the children. Rodriguez told Mother that before a visit could take place, she would have to meet with Mother and review the prior judgment and the service plan. Mother refused to meet with Rodriguez, telling her she was not going to do anything for the Department. During two phone calls, Rodriguez asked Mother if she could come to Mother's home to see if it was safe for the children to go there for visits. Mother refused Rodriguez's requests for a home evaluation. On one occasion, Mother told Rodriguez to "F-off." On the other occasion, Mother told Rodriguez that the Department was never coming into her home again and that caseworkers were never going to see the children that were living in her home.

On appeal, Mother does not dispute that the children in this case were in the permanent managing conservatorship of the Department for six months or more. However, Mother does challenge the sufficiency of the evidence to show (1) that Mother constructively abandoned the children; (2) that the Department made reasonable efforts to return the children to her; (3) that she had not regularly visited or maintained significant contact with the children; and (4) that she had demonstrated an inability to provide the children with a safe environment.

*Constructive Abandonment/Regular Visits or Significant Contact*

Mother argues the evidence was insufficient to establish that she had constructively abandoned the children and that she had not regularly visited or maintained contact with the children. The crux of Mother's argument is that visitation was not possible because it was contingent on a therapist's recommendation and a therapist's recommendation was never obtained. Mother contends that because visitation was not possible, she did not miss any visits with her children and, therefore, she could not have constructively abandoned them. We are not persuaded by Mother's argument.

The evidence showed that Mother was never denied visitation because of the lack of a therapist's recommendation. According to an August 2018, letter from the children's therapist,

there were no restrictions on Mother's visitation. Both caseworkers communicated to Mother that she could visit the children. Shortly after the prior judgment was rendered, Torres informed Mother that she could visit the children by scheduling a visit through KidShare. Mother failed to follow through and schedule a visit through KidShare. By the time of trial, Mother had not visited the children in more than three years. Rodriguez testified that she had maintained regular phone contact with Mother and, although Mother inquired about the children, she usually did not request any visitation with them. Mother did not start asking Rodriguez about visiting the children until July 2019, which was about two months before trial. Rodriguez told Mother that before a visit could take place, they would need to meet and review the prior judgment and Mother's service plan. Mother, however, refused to meet with Rodriguez. Rodriguez also asked Mother if she could come to her home to see if it was an appropriate place for visits to take place. Again, Mother refused Rodriguez's offer.

Mother criticizes the caseworker's insistence on an in-person meeting before mutually agreeing to visitation, emphasizing that such a meeting was not required by the prior judgment. However, the trial court could have found that it was reasonable for the caseworker to insist on a meeting with Mother before agreeing to schedule a visit, especially given Mother's lack of cooperation. The undisputed evidence showed that Mother had not visited the children for more than three years. The prior judgment authorized Mother to visit the children "at times mutually agreed to . . . by the parties." Additionally, according to the prior judgment, Mother could have scheduled a supervised visit through KidShare or a similar facility, but she did not pursue this alternative. Furthermore, nothing indicates Mother made any attempts to maintain contact with the children.

Based on all the evidence presented, we conclude the trial court could have formed a firm belief or conviction that Mother constructively abandoned the children and that Mother had not

regularly visited or maintained significant contact with the children. *See In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.) (concluding a parent's ten-month lapse in visiting the child supported a finding of constructive abandonment).

*Reasonable Efforts to Return the Children to Mother*

Next, we determine if the trial court could have formed a firm belief or conviction that the Department made reasonable efforts to return the children to Mother. This element does not necessarily mean the Department must physically deliver the children to the parent. *In re G.P.*, 503 S.W.3d 531, 533 (Tex. App.—Waco 2016, pet. denied). "The State's preparation and administration of a service plan for the parent constitutes evidence that the State made reasonable efforts to return the child to the parent." *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.). "[T]he question is whether the Department made reasonable efforts, not ideal efforts." *In re F.E.N.*, 542 S.W.3d 752, 767 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Mother blames the Department for not developing a new service plan for her. But under the circumstances presented, the Department cannot be faulted for not developing a new service plan for Mother. On multiple occasions, one of the caseworkers, Rodriguez, asked Mother to meet with her so they could review the prior judgment and Mother's service plan. Mother refused to meet with Rodriguez. In fact, Mother told the caseworker she was "not going to do anything for the Department." Without a meeting, the caseworker could not assess Mother's current situation and determine what services she needed to assist her in any reunification efforts. The trial court could have determined that based on the circumstances of this case, the caseworker's attempts to meet with Mother constituted reasonable efforts to return the children to Mother. *See In re K.G.*, 350 S.W.3d at 354 (concluding "reasonable efforts" element was satisfied based on caseworker's testimony that she tried to facilitate parent-child reunification by providing services, encouraging mother to seek help for mental health problems, and making efforts to ensure that the parent and

child could have good visits). We conclude the trial court could have formed a firm belief or conviction that the Department made reasonable efforts to return the children to Mother.

*Inability to Provide the Children with a Safe Environment*

We further conclude a reasonable factfinder could have determined that Mother demonstrated an inability to provide the children with a safe environment. Multiple factors are relevant to determining if a parent is willing and able to provide children with a safe environment. TEX. FAM. CODE § 263.307(b)[4] (listing factors that may be considered in determining whether the parent is willing and able to provide the child with a safe environment); *In re G.P.*, 503 S.W.3d at 533-34 (applying factors listed in section 263.307(b) when conducting a "safe environment" analysis in the context of constructive abandonment).

On appeal, Mother argues that her home was necessarily a safe environment because her other children were living there at the time of trial. Mother emphasizes that the Department had opened a case for her three younger children, had provided her with family-based services, and had closed this case. We are not persuaded by Mother's argument. Evidence that other children were allowed to remain with Mother in a different case does not necessarily show that Mother

---

[4]Under section 263.307(b) of the Texas Family Code, the factors that may be considered in determining whether the parent is willing and able to provide the child with a safe environment are: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

would be able to provide the children in *this* case with a safe environment. Moreover, providing children with a "safe environment" is not simply about providing them a safe physical environment; it encompasses a multitude of other factors. *See* TEX. FAM. CODE § 263.307(b); *In re G.P.*, 503 S.W.3d at 533-34 (considering several section 263.307(b) factors in concluding that the trial court could have reasonably formed a firm belief or conviction that mother constructively abandoned her child).

One of the factors that may be considered in determining if a parent is willing and able to provide a safe environment is whether the parent demonstrates adequate parenting skills, including providing the child with care, nurturance, and appropriate discipline consistent with the child's physical and psychological development, and guidance and supervision consistent with the child's safety. TEX. FAM. CODE § 263.307(b)(12)(B),(C). Here, the evidence indicated that Mother was unable to provide the children in this case with the care, nurturance, and guidance they needed to create a safe environment. Mother had not visited or had contact with the children in more than three years and a caseworker testified that the children had no bond with Mother. Some of the children in this case required ongoing therapy. Two weeks before trial, Mother admitted to a caseworker that she believed the children in this case would be better off without her because she "was still working on herself" and "becoming a better person."

Another factor that may be considered in determining if a parent is willing and able to provide a safe environment is whether the parent is willing and able to cooperate with and facilitate an appropriate agency's close supervision. *Id*. § 263.307(b)(10). Here, the evidence showed that, on several occasions, Rodriguez had asked Mother to meet to review her service plan and to allow Rodriguez to evaluate Mother's home. But Mother refused to meet with Rodriguez in person or allow her into her home. Specifically, Mother told Rodriguez to "'F'-off" and stated that the Department "was not coming into her home ever again." Mother's unwillingness to meet with a

Department caseworker and allow her into her home showed that Mother was not willing and able to cooperate with and facilitate the Department's close supervision with regard to the children in this case. Based on the totality of the evidence, a reasonable factfinder could have concluded that Mother had demonstrated an inability to provide the children in this case with a safe environment.

We conclude the trial court could have formed a firm belief or conviction that Mother constructively abandoned the children; that Mother failed to regularly visit or maintain significant contact with the children; that the Department made reasonable efforts to return the children to Mother; and that Mother demonstrated an inability to provide the children with a safe environment. Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the evidence was legally and factually sufficient to support the trial court's finding that Mother constructively abandoned the children. We overrule Mother's second issue.

Because we have determined the evidence was legally and factually sufficient to support the trial court's finding of a statutory ground for termination under subsection 161.001(b)(1)(N), we need not determine if the evidence would support the trial court's findings under subsection 161.001(b)(1)(O) or (P). *See In re A.V.*, 113 S.W.3d at 362 ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). Therefore, we do not address Mother's third and fourth issues. *See* TEX. R. APP. P. 47.1 (recognizing appellate courts need only address issues necessary to the final disposition of an appeal).

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE—BEST INTEREST

In her fifth issue, Mother argues the evidence was legally or factually insufficient to support the trial court's finding that termination of her parental rights was in the children's best interest. In his sole issue, Father argues the evidence was legally and factually insufficient to support the

trial court's finding that termination of his parental rights was in the children's best interest. We address these issues together.

In evaluating the children's best interest, courts consider the non-exhaustive *Holley* factors.[5] *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013); *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). However, "[t]he absence of evidence about some of these [factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d at 27. Courts also consider the factors set forth in section 263.307(b) of the Texas Family Code. TEX. FAM. CODE § 263.307(b).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the children's best interest. *In re C.H.*, 89 S.W.3d at 28. A best interest analysis may consider direct and circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id*.

Therefore, in reviewing the sufficiency of the evidence to support the trial court's best interest finding, we do not limit the scope of our review to events occurring after the prior judgment. *See In re J.R.I.*, 2014 WL 4346291, at *1 (stating that "[a]fter a trial court has previously rendered an order denying a petition to terminate parental rights, a parent's rights to that child may be terminated [] upon proof of *one of the acts listed in section 161.001 that was committed after*

---

[5]These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

*the denial of a prior petition to terminate*….”) (emphasis added); *In re D.N.*, 405 S.W.3d at 871 (providing that the limitation on the scope of a sufficiency review in a subsequent termination proceeding applies to “*predicate acts or omissions* under section 161.001,” not to the best interest finding) (emphasis added). We consider all the evidence admitted at trial in evaluating the best interest of the children. *See In re C.H.*, 89 S.W.3d at 27-28 (recognizing the importance of a parent’s “historical deficiencies in parenting” and “past performance as a parent” to the best interest determination); *In re N.R.G.*, No. 04-19-00430-CV, 2019 WL 5927458, at *1 (Tex. App.—San Antonio Nov. 13, 2019, no pet.) (“[I]n determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent’s future conduct by her past conduct.”).

With these standards and factors in mind, we consider the evidence as it relates to the children’s best interest.

*Desires of the Children*

At the time of trial, the children ranged in age from four to ten years old. The three oldest children were living in a foster home. The current caseworker, Rodriguez, testified that she was aware of the desires of the three oldest children. The three oldest children wanted to be with family and to be adopted and have a “forever home.”

The two youngest children had lived with the same relative, Gina, for about four and a half years. Gina was the only mother the youngest child had ever known, and the second youngest child called her “Mom.”

*Emotional and Physical Needs/Emotional and Physical Danger*

A Department caseworker, Ruchi Davis, stated the children were initially removed from Mother’s and Father’s care because of domestic violence between the parents and drug use by both parents. After the children’s removal and while they were in foster care, one of the children told

the caseworker that she had seen Mother and Father having sex quite often. The child said that Mother and Father would have sex in front of her and the other children. The same child began engaging in "sexualized behaviors" that were directed toward some of her siblings. Because of the oldest child's outcry, the Department arranged for the three oldest children to participate in therapy. When Davis talked to Mother about one of the children's claims that she and Father had frequently engaged in sex in front of the children, Mother laughed and said it was not true.

Davis testified that some of the children's negative behaviors—their use of profanity and their acts of aggression—mirrored the domestic violence they were exposed to when they lived in Mother's and Father's home. Davis added that she was not in favor of the Department's decision to abandon termination in the first suit; she had recommended that the Department proceed to terminate Mother's and Father's parental rights. Davis claimed her recommendation was not followed for financial reasons. According to Davis, the three oldest children required long-term therapy and the conservatorship provisions in the prior judgment allowed the children's caregiver to receive benefits to pay for this therapy.

A subsequent caseworker, Rodriguez, testified that neither parent had demonstrated that they could satisfy the children's physical or emotional needs. Rodriguez said that she did not see any bond between the children and the parents. Rodriguez added that she was unable to assess the status of the parents' drug use and domestic violence problems because the parents had refused to meet with her to talk about their service plans or to allow her into their home. Neither parent had demonstrated to Rodriguez that they had eliminated the dangers of drug use and domestic violence.

*Parental Abilities/Acts and Omissions/Excuses/Programs Available—Mother*

At the beginning of the first case, Mother participated in three visits with the children, all of which, according to the initial caseworker, Davis, were very chaotic and inappropriate. Davis testified that during these visits, the children used profanity and made profane gestures.

Specifically, the children would "cuss" at Mother, say "the 'B' word," say "F-you to her," and "throw the finger to her." Mother reacted to this behavior by laughing at the children. Mother once offered each of the children a dollar to stop "cussing" and to take a picture with her. After each visit, the caseworker would advise Mother how she could better handle the children's behavior. During the next visit, Mother would apply these suggestions for the first five minutes, but then she would allow the visit to become chaotic again.

After her appointment as possessory conservator, Mother had no contact with the children. Mother argues that she was prevented from exercising visitation because the prior judgment did not allow her to visit the children without a therapist's recommendation; however, as we explained in our previous discussion of constructive abandonment, the evidence showed otherwise. Two caseworkers testified that Mother had opportunities to visit the children, but she failed to take advantage of these opportunities. Mother's lack of contact with the children and her lack of initiative in scheduling visits indicates that her relationship with the children was not a proper one.

Davis, one of the initial caseworkers assigned to the case, testified that a family service plan was developed for Mother when the Department filed its first termination suit, but Mother had failed to complete all parts of the plan. And, even though Mother did complete drug treatment, she admitted to a caseworker that she continued to use marijuana. Mother did not complete domestic violence classes.

The current caseworker, Rodriguez, testified that by the time of trial, Mother had not shown that she had basic parenting skills. Additionally, because of Mother's lack of cooperation, Rodriguez had been unable to evaluate whether Mother had an adequate support system in place.

Rodriguez further testified that she had several conversations with Mother about relinquishing her parental rights to the children in this case. Mother had told Rodriguez on several occasions that she knew the children were better off without her and she felt that the children

should live with Gina, the relative who had been caring for the two youngest children for the past four and half years. Two weeks before trial, Rodriguez and Mother had an hour-long conversation in which Mother again stated that it would be best for the children to live with Gina. Mother said the children would be better off without her because she had not seen them in a long time and because she "was still working on herself" and "becoming a better person."

Rodriguez finally testified that she had texted Mother on the morning of trial and told her that everyone was in court. In response, Mother told Rodriguez that she was not coming to court because she did not think it was necessary because nothing had changed. Mother's lack of interest in attending the trial involving the termination of her parental rights was further evidence that her relationship with the children was not a proper one.

*Parental Abilities/Acts and Omissions/Excuses/Programs Available—Father*

One of the initial caseworkers, Davis, testified that early in the case Father had signed a service plan that required him to participate in drug treatment and to complete domestic violence and parenting classes. Father attended domestic violence classes until he was incarcerated on a family violence case involving Mother. While Father was serving his sentence for a family violence conviction, Davis advised him by letter that she was the caseworker assigned to his case. Father told Davis to communicate with his mother about his case. To Davis's knowledge, Father never completed any of the services on his service plan.

A subsequent caseworker, Torres, testified that she met with Father on one occasion, after a court hearing in July 2018. At the time, Father was interested in regaining custody of the children. Torres met with Father and reviewed a new service plan with him. Father understood the service plan and signed it. According to the new service plan, Father was supposed to maintain contact with the Department twice a month; notify the caseworker of any changes in his address, phone number, employment, involvement with law enforcement, and relationship status; provide proof

of financial stability and a support system; complete a psychological evaluation, drug assessment, individual counseling services, and parenting classes; submit to random drug testing; and make significant changes to address any issues that led to the filing of the case. The service plan also required Father to follow through with all recommendations. While Torres was on the case, Father did not complete any of these services.

Torres also testified that during the two years she handled this case, she had only one phone conversation with Father, which occurred in December 2016. Father asked to visit the three older children, but Torres told him that because there was an open sexual abuse investigation, Father would need to talk to the investigator before any visitation could take place. Father "cussed" at Torres and would not let her provide him with the investigator's contact information.

Rodriguez testified that the problems persisted when she took over the case. At one court hearing, Rodriguez asked Father for his new phone number and Father responded by yelling at her in the courthouse. A sheriff's deputy directed Rodriguez to leave for her own safety. Rodriguez had seen Father become agitated on other occasions. For example, during one hearing, Father interrupted her while she was testifying and called her a liar.

Additionally, Rodriguez testified that she and Diana Torres, the previous caseworker, had met with Father in September 2018 to review his service plan with him. During this meeting, Rodriguez told Father that his recent hair follicle test was positive for cocaine and marijuana. Father stated the reason he had a positive drug test was because the Department "stress[ed] him out." On October 5, 2018, Father participated in a drug assessment. Based on this assessment, Father was supposed to participate in outpatient treatment. Nevertheless, Father failed to appear for outpatient drug treatment and offered no excuse for his failure to appear. In September 2018, Father started attending parenting classes, but after a few months he was discharged from the

classes because he had too many absences. Father did not offer any excuses for his absences from parenting classes.

Finally, Rodriguez testified that by the time of trial, Father had not shown that he had basic parenting skills, and because of his lack of cooperation, Rodriguez had been unable to evaluate if he had an adequate support system in place.

*Plans for the Children/Stability of the Home or Proposed Placement*

One of the caseworkers, Davis, testified that the three oldest children had lived in at least four different homes. The three oldest children's first placement was a foster home. The children had to be moved out of this home because of the children's behavior and the foster parents' inability to put safety measures in place. Next, the children were placed with a relative. Mother attempted to visit the children at the relative's home. When the relative told Mother that she could not visit the children there, the relative and Mother had a physical altercation. Because of this altercation, the children were moved out of the relative's home. Next, the children were placed in a group home, where they exhibited aggressive behavior and had "heavy tantrums." One of the children kicked and seriously injured the group home's director. Subsequently, the three oldest children were placed with a different relative in Brownsville, Texas.

When the trial court signed the prior judgment, the three oldest children were living with a relative in Brownsville, and the two youngest children were still living in their initial placement with Gina. At the time, the Department's goal was for each of the relatives to become the sole managing conservator of the children in their care. However, in June 2019, the three oldest children had to be moved from the Brownsville placement to a foster home in New Braunfels, Texas. Rodriguez explained that the oldest children had to be moved because the placement "broke down."

At the time of trial, the Department's plan was for all five children to be adopted by Gina, the relative who had been caring for the two youngest children for the last four and a half years. The evidence indicated that Gina could provide the children with much-needed stability. Gina was a licensed care provider and had been caring for the two youngest children for four and half years. Gina wanted to adopt all five children; however, to do so, Gina would need to find a bigger home. In the meantime, the three older children had been to Gina's home for several overnight visits. The overnight visits gave all five siblings an opportunity to spend time together. According to Rodriguez, the only obstacle to placing all five children with Gina was the size of her home. Rodriguez added that she felt that the children, and particularly the three oldest children, were in need of permanence and that Gina could provide this for them.

*Relevant Section 263.307 Factors*

Other relevant factors a court may consider in determining the children's best interest include: the magnitude, frequency, and circumstances of harm to the child; the results of psychiatric, psychological, or developmental evaluations of the child; whether there is a history of abusive or assaultive conduct by the child's family; whether there is a history of substance abuse by the child's family; whether the perpetrator of the harm to the child is identified; and the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision. TEX. FAM. CODE § 263.307(b)(3), (6), (7), (8), (9), (10).

At the time of trial, the children were four, six, eight, nine, and ten years old. The evidence indicates that a high degree of harm had been done to the three oldest children, who were still undergoing therapy. Father had been identified as the perpetrator of sexual abuse. Father had also been identified as the perpetrator of domestic violence against Mother and had a felony conviction for family violence. Mother told a caseworker that Father would beat her and that the beatings

were severe. Both Mother and Father had a history of drug abuse. Additionally, during the course of this case, both Mother and Father demonstrated an unwillingness to cooperate with the Department and facilitate its close supervision.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the evidence was legally and factually sufficient to support the trial court's findings that termination of Mother's and Father's parental rights was in the children's best interest. *See* TEX. FAM. CODE § 161.001(b)(2); *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We overrule Mother's fifth issue and Father's sole issue.

## CONCLUSION

The judgment terminating Mother's and Father's parental rights is affirmed.

Irene Rios, Justice