**AFFIRMED and Opinion Filed August 30, 2021**



In the
### Court of Appeals
### Fifth District of Texas at Dallas

## No. 05-21-00170-CV

## IN THE INTEREST OF A.M. AND A.M., CHILDREN

**On Appeal from the 354th District Court**
**Hunt County, Texas**
**Trial Court Cause No. 87085**

## MEMORANDUM OPINION
Before Justices Myers, Osborne, and Carlyle
Opinion by Justice Carlyle

Father appeals the trial court's order terminating his parental rights to A.M. and A.M. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

After Mother and Father separated, their children, A.M. and A.M., lived with Mother. The Department began investigating Mother after it received reports of abuse and neglect in Mother's home. When Mother failed a court-ordered drug test, the Department contacted Father and informed him it was removing the children from Mother's care. Rather than bringing the children to the Department as instructed, Father withdrew the children from their school and tried to evade the Department. The Department located and took custody of the children in March

2019, when Father tried to enroll them in a new school. After the removal, the Department lost contact with Father, who became incarcerated in November 2019.

Based on concerns raised during its investigation, the Department sought to terminate both Mother's and Father's parental rights.[1] At Father's trial, Department caseworker Lee Ann Walston detailed her efforts to locate Father and engage him in services aimed at reunification. She explained that Father did not cooperate and did not maintain contact with either the Department or the children. She noted that Father never visited the children while she was assigned to the case, and she opined that, because Father was incarcerated, he could not provide a safe and stable environment for them. Moreover, because he failed to maintain contact with the Department or complete any services to alleviate its concerns, the Department had no reason to think he could provide for the children. Ms. Walston believed termination was in the children's best interest.

Marsha Womack, a caseworker who took over the case from Ms. Walston, also detailed her efforts to work with Father towards reunification. She testified that she wrote Father monthly to update him about the children and explain the Department's plan for them, and she called him on several occasions. She sent Father the service plan the Department created for him, which he acknowledges receiving

---

[1] The trial court terminated Mother's rights at a February 2020 hearing, but Mother is not a party to this appeal.

in July 2020, and she asked if there were any services he could complete while incarcerated. She also investigated Father's relatives for potential placements, but she could not find a suitable candidate. She said that, while she was assigned to the case, Father asked about the children only once, and he neither visited them nor provided anything for them. Like Ms. Walston, Ms. Womack opined that Father cannot provide a safe environment for the children because he is incarcerated and because he has done nothing to alleviate the Department's concerns about placing the children in his care. Ms. Womack likewise believed termination was in the children's best interest.

CASA advocate Roxanne Turner testified that she has seen vast improvement in the children since the beginning of the case. In opining that termination would be in their best interest, she voiced concerns about allegations of physical abuse and neglect by Father. She also testified that the children are anxious and afraid about seeing Father again.

In his testimony, Father disputed the Department's account of its interactions with him. He said he tried to contact the Department many times, but nobody would return his calls. He also said he visited the children once, but the Department cut the visit short after the children became upset. He thus chose not to visit them again because he did not want to traumatize them. He admitted using drugs after the children were removed from his care, and he acknowledged he was serving time for

criminal offenses for which he was arrested while the case was pending. He also admitted he could offer neither a suitable caregiver nor a plan to provide for the children during his incarceration. Father acknowledged he was accused of disciplining the children by striking them with a coat-hanger, but he denied that allegation.

At the conclusion of the trial, the court terminated Father's parental rights on the ground that he constructively abandoned the children. *See* TEX. FAM. CODE § 161.001(b)(1)(N). Father appeals, contending the evidence is legally and factually insufficient to support the trial court's findings under subsections (i) and (iii) of family code section 161.001(b)(1)(N). *See id.*

A trial court may terminate the parent-child relationship only if it finds by clear and convincing evidence that: (1) one or more of the statutory grounds for termination enumerated in the Texas Family Code has been established; and (2) termination is in the child's best interest. *Id.* § 161.001(b). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

Our standards of review on appeal reflect the elevated burden of proof at trial. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014); *In re A.T.*, 406 S.W.3d 365, 370 (Tex. App.—Dallas 2013, pet. denied). Both legal- and factual-sufficiency reviews require

us to review the evidence to determine whether the factfinder reasonably could have formed a firm belief or conviction that the grounds for termination were established. *See In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002); *In re L.E.H.*, No. 05-18-00903-CV, 2018 WL 6839565, at *4 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.). The difference between the two reviews lies primarily in the way we consider evidence contrary to a finding. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

Our review of legal sufficiency requires us to view all the evidence in the light most favorable to the finding. *Id.* Thus, we assume the factfinder resolved all factual issues in favor of the finding and disregard all disputed evidence to the contrary. *Id.* at 630–31. Our review of factual sufficiency, in contrast, requires us to weigh the disputed evidence contrary to the finding and determine whether, in light of the entire record, the evidence that could not reasonably be credited in favor of the finding is so significant that it would prevent the formation of a firm belief or conviction that the finding is true. *Id.* at 631. In applying this standard, we must be mindful not to scrutinize the evidence to the point where "the only factfindings that could withstand review are those established beyond a reasonable doubt." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

To terminate parental rights under section 161.001(b)(1)(N), the court must find that a child has been in the permanent or temporary managing conservatorship of the Department for not less than six months, and: "(i) the Department made

reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment."

THE EVIDENCE SUFFICIENTLY SUPPORTS THE TRIAL COURT'S FINDING THAT THE
DEPARTMENT MADE REASONABLE EFFORTS TO RETURN THE CHILDREN

Father first contends the evidence does not show the Department made reasonable efforts to return the children to him. *See id.* § 161.001(b)(1)(N)(i). On this issue, it is important to note that "the question is whether the Department made reasonable efforts, not ideal efforts." *In re X.A.S.*, No. 05-19-01082-CV, 2020 WL 1042520, at *3 (Tex. App.—Dallas Mar. 3, 2020, no pet.) (mem. op) (quoting *In re F.E.N.*, 542 S.W.3d 752, 766–67 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)).

Father argues the Department did not make reasonable efforts because it never properly served him with the petition, noting there is no signed citation return in the record. But Father admitted at trial that he was served in Smith County jail, and he filed an answer in the case, which made service unnecessary. *See* TEX. R. CIV. P. 121; *Phillips v. Dallas Cty. Child Protective Servs. Unit*, 197 S.W.3d 862, 865 (Tex. App.—Dallas 2006, pet. denied). To the extent Father complains the Department waited until July 2020 to serve him, the record supports a conclusion that Father contributed to the lengthy delay by frustrating the Department's efforts to locate him.

In any event, the record demonstrates the Department's reasonable efforts to return the children. Ms. Walston testified she contacted Father in March 2019 to schedule a meeting and tell him about pending court dates. Father skipped both the scheduled appointment and the court hearings. Ms. Walston then created service and visitation plans in May 2019, but she could not give them to Father because he avoided her calls. In July or August 2019, after numerous unsuccessful attempts to reach him, Ms. Walston contacted Father's mother, who provided an alternative phone number for reaching him. Ms. Walston left Father a voicemail at the new number and tried to schedule a meeting when he finally returned her call in late August, but the call got disconnected. After additional unsuccessful attempts to contact Father, she assigned a special investigator to locate him in October 2019, but she was never able to reach Father. Eventually, Ms. Walston learned about Father's incarceration, and she visited him at the Smith County jail in February 2020.

Ms. Womack testified she contacted Father at the jail several times after she took over the case from Ms. Walston. She updated Father on the status of the case, provided a copy of the service plan, asked whether there were any services he could complete at the jail, and investigated relatives for potential placements. *See In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.) (evidence that the Department made a service plan and investigated placements with relatives was sufficient to show reasonable efforts to return child to incarcerated parent); *In*

*re K.J.T.M.*, No. 06-09-00104-CV, 2010 WL 1664027, at \*3–4 (Tex. App.—Texarkana Apr. 26, 2010, no pet.) (mem. op.) (same).

Although Father disputes the Department's version of events and testified that the Department would not take his calls or return his messages, the trial court could have found his testimony lacked credibility. *See In re X.A.S.*, 2020 WL 1042520, at \*2 ("[W]e must defer to the factfinder's determinations as to witness credibility."). Viewing the evidence in the light most favorable to the termination findings, we conclude the trial court could have formed a firm belief or conviction that the Department made reasonable efforts to return the children to Father.

THE EVIDENCE SUFFICIENTLY SUPPORTS THE TRIAL COURT'S FINDING THAT FATHER DEMONSTRATED AN INABILITY TO PROVIDE A SAFE ENVIRONMENT FOR THE CHILDREN

Father next contends the evidence does not show he demonstrated an inability to provide a safe environment for the children. *See* TEX. FAM. CODE § 161.001(b)(1)(N)(iii). For this element, the family code provides a list of non-exhaustive factors to consider, including as relevant here: (1) the child's physical or mental vulnerabilities; (2) the frequency and nature of the child's out-of-home placements; (3) whether the child is fearful of living in or returning to the parent's home; (4) whether the parent has a history of abusive or assaultive conduct; (5) whether the parent has a history of substance abuse; (6) the parent's willingness and ability to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; and (7) whether the parent

demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities. *See id.* § 263.307(b); *In re E.M.*, No. 05-18-01161-CV, 2019 WL 1449791, at *5 (Tex. App.—Dallas Apr. 1, 2019, no pet.) (mem. op.).

The record shows that, despite knowing the children were in the Department's care, Father chose not to maintain contact with them. He admitted he did not provide any support for the children during the case, and he acknowledged he could not arrange for an appropriate person to care for them during his incarceration. The evidence also suggests Father failed to cooperate and maintain contact with the Department, failed to provide the Department with information regarding his living and employment circumstances, has a history of drug abuse, and engaged in criminal activity while the case was pending, resulting in his incarceration. *See In re D.P.G.*, No. 05-20-00652-CV, 2021 WL 2472717, at *9 (Tex. App.—Dallas June 17, 2021, no pet. h.) (evidence sufficient where mother had history of drug abuse, failed to maintain contact with the Department, failed to provide information about living or employment circumstances, and failed to arrange for an appropriate person to care for the child); *In re L.L.M.*, No. 04-13-00351-CV, 2013 WL 5950151, at *3 (Tex. App.—San Antonio Nov. 6, 2013, no pet.) (mem. op.) (noting that criminal activity

and incarceration are relevant factors in determining whether a parent demonstrated an inability to provide a safe environment).

Further, the record shows that one of the children has psychiatric issues for which Father does not support the prescribed treatment, and both children have behavioral issues that have improved while in the Department's care. The children have had several out-of-home placements, and there was testimony that the children fear the prospect of returning to Father. Viewing the evidence in the light most favorable to the termination findings, we conclude the trial court could have formed a firm belief or conviction that Father demonstrated an inability to provide the children with a safe environment.

We affirm the trial court's judgment.

210170f.p05

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.M. AND
A.M., CHILDREN

No. 05-21-00170-CV

On Appeal from the 354th Judicial
District Court, Hunt County, Texas
Trial Court Cause No. 87085.
Opinion delivered by Justice Carlyle.
Justices Myers and Osborne
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of August, 2021.